# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re<br><br>LINDA LYNN-WEAVER,<br><br>                               Debtor<br>_____<br><br>LINDA LYNN-WEAVER,<br><br>                               Plaintiff<br><br>v.<br><br>ABN-AMRO MORTGAGE GROUP, INC.,<br>HARMON LAW OFFICES, P.C., and<br>IRVING SHECHTMAN & CO.,<br><br>                               Defendants | Chapter 13<br>Case No. 06-11544-WH<br><br><br><br><br><br><br>Adversary Proceeding<br>No. 06-1364 |

### MEMORANDUM OF DECISION AND ORDER ON
### PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
### AND ON
### DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

In this adversary proceeding, the Plaintiff and Debtor, Linda Lynn-Weaver, seeks an award of damages against the Defendants under 11 U.S.C. § 362(k)(1) for violating the automatic stay by five times rescheduling a foreclosure sale without first obtaining relief from the automatic stay. The Defendants are the Debtor's mortgagee, ABN-AMRO Mortgage Group Inc. ("ABN"); the firm employed by ABN to complete the foreclosure process, Harmon Law Offices, P.C. ("Harmon"); and the auctioneer employed by ABN and Harmon to conduct the foreclosure auction sale, Irving Shechtman & Co. ("Shechtman"). The adversary proceeding is before the court on two motions for summary judgment: the Debtor's motion for partial summary judgment against ABN and Harmon for partial summary judgment, seeking a determination as to liability only; and a cross-motion by ABN and Harmon for summary

judgment.[1] For the reasons set forth below, the Court now allows the Debtor's motion and denies the Defendants' motion.

**FACTS**

The facts are as follows. In 2002, the Debtor executed and delivered to Hunneman Mortgage Corporation a promissory note in the principal amount of $350,000 and, as security therefor, a mortgage on her residence, located at 225-227 Blue Hills Parkway, Milton, Massachusetts. In March 2006, by which time ABN had become the holder of the note and mortgage and the mortgage was in default, ABN referred the loan to Harmon to commence foreclosure of the mortgage. Harmon in turn retained Shechtman as the auctioneer and scheduled a foreclosure sale to take place on May 26, 2006. Two days before the scheduled foreclosure, the Debtor filed a petition for relief under Chapter 13 of the Bankruptcy Code and, by counsel, notified Harmon of the bankruptcy filing. She was then seven months in arrears on her mortgage payments and owed a total of approximately $350,000 on the mortgage debt.

On May 26, 2006, at the scheduled date and time of the foreclosure sale, Harmon postponed the foreclosure until June 30, 2006. At the time, the Debtor still had not filed her schedules, statement of financial affairs, chapter 13 plan, and certain other required documents in her bankruptcy case.

On June 30, 2006, Harmon again postponed the foreclosure, this time by rescheduling it to September 13, 2006. By this time, the Debtor had filed the required documents in her bankruptcy case, but she had failed to pay her first postpetition mortgage payment, which had

---

[1] Shechtman is not a party to either motion.

2

come due on June 1.  ABN had not yet filed a motion for relief from the automatic stay to foreclose.

The Debtor's second postpetition mortgage payment to ABN came due on July 1, 2006, and the Debtor failed to make that payment at any time in July.  Consequently, on or about July 20, 2006, with the Debtor now two postpetition payments in arrears, ABN instructed Harmon to move for relief from stay to proceed with foreclosure on the basis that the Debtor was not making postpetition mortgage payments.  On July 21, 2006, Harmon did file such a motion.  When the Debtor objected, the Court held a preliminary hearing on the motion on August 10, 2006, and continued the hearing to September 14, 2006.

On September 13, 2006, at the date and time of the scheduled foreclosure sale, Harmon postponed the foreclosure sale a third time, this time rescheduling it to November 28, 2006.  At the time of this third postponement, the Debtor had made three postpetition mortgage payments to ABN but remained one postpetition payment in arrears.  Also, she had not yet obtained confirmation of a chapter 13 plan; ABN had objected to the Debtor's amended plan, and a hearing on that objection was pending.

On September 14, 2006, the Court denied ABN's motion for relief from stay.  On September 20, 2006, the Debtor commenced the present adversary proceeding, demanding damages for the three postponements that had by then occurred.[2]

On November 28, 2006, at the date and time of the scheduled foreclosure sale, Harmon postponed the foreclosure sale a fourth time, this time rescheduling it to February 23, 2007.  At the time of the fourth postponement, the Debtor was current on her postpetition payments.  Also, ABN's objection to the Debtor's amended plan had been sustained, and the Debtor was under

---

[2] With leave of court, she later amended the complaint to add the two subsequent postponements as additional grounds for damages.

3

order to file an amended plan by December 31, 2006. On December 15, 2006, the Debtor did file a second amended plan, and on January 18, 2007, the Court allowed the Debtor's motion to approve the second amended plan.

On February 23, 2007, at the date and time of the scheduled foreclosure sale, Harmon postponed the foreclosure sale for the fifth time, this time rescheduling it to May 1, 2007. At the time of this fifth continuance, the debtor remained current on her postpetition payments and, although the confirmation order had not yet entered, the Court had approved the Debtor's second amended plan. On February 28, 2007, the Debtor moved in this adversary proceeding for a restraining order against the Defendants' further advertising, conducting, or postponing a foreclosure sale without first obtaining relief from the automatic stay. Shortly thereafter, ABN and Harmon stipulated to cancellation of the foreclosure sale, whereupon the Debtor withdrew her motion for a retraining order.

**ARGUMENTS OF THE PARTIES**

Each party argues that on the above facts, it is entitled to judgment as a matter of law. The Debtor contends that repeated postponements of the foreclosure sale are, *per se*, a violation of the automatic stay, first because it directly contravenes the injunction in 11 U.S.C. § 362(a)(1) against the "continuation" of an action or proceeding against the debtor and second because it perpetuates the threat of foreclosure, which threat, by its nature and regardless of the mortgagee's state of mind, harasses and pressures the debtor to pay the underlying debt. The Debtor urges the Court not to follow the holding in *First Nat'l Bank of Anchorage v. Roach (In re Roach),* 660 F.2d 1316 (9th Cir. 1981) (postpetition continuance of foreclosure sale deemed not violative of automatic stay because the mortgagee merely maintained the status quo and did

4

not harass, interfere, or gain advantage), both (a) because it is inconsistent with the injunction in § 362(a)(1) against the "continuation" of an action or proceeding against the debtor and (b) because recent legislative modifications to the duration of the automatic stay have enhanced the protections of creditors against abusive bankruptcy filings and thereby undercut the rationale for *Roach*, which was to permit mortgagees to maintain the status quo in the face of clearly abusive bankruptcy filings.  In the alternative, the Debtor argues that a postpetition postponement violates the stay if, at the time of the postponement, there exists no objectively reasonable expectation that relief from the automatic stay is likely to be obtained in the foreseeable future; and the postponements here violated the stay because, at the time of each postponement, there existed no such reasonable expectation.  The Defendants urge the Court to follow *Roach* by holding that, in a chapter 13 case, postponements of a foreclosure sale that (a) occur before confirmation of a chapter 13 plan or when the creditor has a reasonable expectation that relief from the stay is likely to be obtained in the foreseeable future, and (b) are done solely to preserve the status quo are, as a matter of law, not violations of the automatic stay.

**REVIEW ON MOTIONS FOR SUMMARY JUDGMENT**

A motion for summary judgment should be granted only upon a court's determination of two ultimate issues of law in favor of the moving party:  that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).
Where the burden of proof at trial would fall on the party seeking summary judgment, as it does here with respect to the Debtor on her motion, that party must support its motion with evidence—in the form of affidavits, admissions, depositions, answers to interrogatories, and the

5

like—as to each essential element of its cause of action. The evidence must be such as would permit the movant at trial to withstand a motion for directed verdict under F. R. CIV. P. 50(a). *Anderson v Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). If the motion is properly supported, the burden shifts to the adverse party to submit evidence demonstrating the existence of a genuine issue as to at least one material fact.

Where, as with the Defendants on their own motion for summary judgment, the moving parties' would not bear the burden of proof at trial, the movants' initial burden is to demonstrate or point out a lack of evidence to support at least one essential element of the opposing party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). The burden then shifts to the opposing party to adduce such evidence on each of the disputed elements as at trial would be sufficient to withstand a motion for directed verdict. *Anderson v Liberty Lobby, Inc.*, *supra*. Summary judgment will enter for the movant if the party bearing the burden of proof fails to establish the existence of an element essential to its case. *Celotex Corp. v. Catrett*, 477 U.S. at 322-323; *In re Varrasso*, 37 F.3d 760, 763 n.1 (1st Cir. 1994).

**DISCUSSION**

I have previously recognized the *limited* right of a mortgagee to continue a pending foreclosure sale: "a single continuance of a foreclosure sale following the filing of a petition is not a violation of the automatic stay if, before the continued sale date, the creditor filed an appropriate motion for relief from stay." *In re Heron Pond, LLC*, 258 B. R. 529, 530 (Bankr. D. Mass. 2001). In so holding, and with guidance from the Supreme Court's decision in *Strumpf*,[3] I

---

[3] *Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16, 116 S.Ct. 286, 133 L.Ed.2d 258 (1995). In *Strumpf*, the court held that a bank's placing of an administrative freeze on the account of a chapter 13 debtor pending resolution of the bank's right of setoff against the debtor did not violate automatic stay. In so holding, the Court held that the bank's action was not a setoff within the meaning of § 362(a)(7) (staying the exercise of any right of setoff

emphasized that this departure from strict compliance with § 362(a)(1) was temporary, a place-holding measure intended only to secure the status quo for a brief time until a motion for relief from stay could be filed.  Here, the mortgagee and its counsel did not move for relief from the automatic stay before the date to which they initially postponed the sale.  It follows that the initial continuance was a violation of the automatic stay.  No relief from the stay having been obtained for the subsequent continuances, they too were violations of the stay.  A mortgagee's right to continue a foreclosure sale notwithstanding the automatic stay is a limited exception.  To permit an indefinite number of continuances without judicial review of a prompt motion for relief from the stay is, in essence, to rewrite the statute, to expand a minor judicial accommodation for the extraordinary cases in which it was born into a loophole large enough to accommodate the proverbial Mack truck.  On the undisputed and uncontroverted facts, the Defendant's five continuances were, as a matter of law, violations of the automatic stay.

In order to justify an award of damages for violation of the automatic stay, § 362(k) also requires a showing that the continuances were "willful." 11 U.S.C. § 362(k).  Here, willfulness requires only an intent to commit the act in question, not malice or specific intent of any kind.  It is undisputed that the various continuances were deliberate acts on the parts of both ABN and Harmon.  The violations of the stay were therefore willful.

---

against the debtor) because the bank had not permanently and absolutely refused to pay its debt to the debtor "but only while it sought relief under § 362(d) from the automatic stay." *Id.*, 516 U.S. at 19, 116 S.Ct. at 289.

7

## **ORDER**

For the reasons set forth above, the Defendants' Motion for Summary Judgment is denied and the Plaintiff's Motion for Partial Summary Judgment is granted. The Court will schedule a pretrial conference to discuss further proceedings.[4]

Date:  March 27, 2008

_____
William C. Hillman
United States Bankruptcy Judge

---

[4] The Plaintiff has so far established only liability for actual damages, and she has done so against only two of the three defendants.  By this motion, she has established neither the extent of actual damages nor the appropriateness of punitive damages, these matters having been outside the scope of both motions.